LEWIS F. STRATTON and others *vs.* BENJAMIN D. COLE.

Penobscot. Opinion January 8, 1887.

*State lands. Deeds of land agent. Mortgage. Liens. Stat. 1832, c. 30.*

A deed from the State Land Agent, under Stat. 1832, c. 30, containing a stipulation that when the purchase money is paid "then this is to be a good

and sufficient deed to convey said lots, otherwise to be null and void, and said lots to be and remain the property of said state," does not convey the legal title.

The title in such a case remains in the state until the payment of the purchase money; and an extension of the time of payment does not operate to pass any title.

ON REPORT.

The opinion states the case.

*Humphrey and Appleton*, for plaintiffs.

A condition does not defeat the estate, although broken, until entry by the grantor or his heirs, and then he is in as of his former estate. He must make an actual entry, for the breach of the condition, otherwise no forfeiture is incurred, and the title remains unimpaired in the grantee. *Guild* v. *Richards*, 16 Gray, 318.

In *Wilbur* v. *Toby*, 16 Pick. 177, and in *Thompson* v. *Bright*, 1 Cush. 420, it was held that the statute of 18 Henry VI., c. 6, was in force in the Commonwealth of Massachusetts. That statute provides, says WILDE, J., in *Thompson* v. *Bright*, that all letters patent, or grants of lands and tenements, before office found or returned into the Exchequer, shall be void.

An " inquest of office " or " office found " was an inquiry made by the king's officers. See 8 Bac. Abr. 98, title " prerogative. "

It is one of the principles of the common law, upon which the security of private property from the grasp of power depends, that the crown can only take by matter of record. 3 Bl. Comm. 259.

The construction of this statute, 18 Henry VI., c. 6, was very fully considered in *Doe* v. *Redfern*, 12 East's 96.

In *Jackson* v. *Adams*, 7 Wend. 368, it was declared that if an estate escheat, by the death of the tenant without heirs, yet until office found, the state has no right to enter and take possession.

In the *People* v. *Brown*, 1 Caines' Rep. 416, the defendant entered upon certain lands, which he claimed under a conditional grant, the condition of which was never performed. By direction of the legislature of New York, the Attorney General

filed an information against the defendants, for an intrusion on said lands. Judgment was ordered for the defendants, there having been no inquest of office.

In the great case of *Fairfax's Devisee* v. *Hunter's Lessee*, 7 Cranch, 629, Judge STORY, for the court, says that Denny Fairfax had a complete though defeasible title by virtue of the devise, and as the possession was either vacant or not adverse, of course the law united a seizin to his title in the lands in controversy, and this title could only be divested by an inquest of office, perfected by an entry and seizure when the possession was not vacant. And no grant by the commonwealth, according to the common law, could be valid, until the title was by some means fixed in the commonwealth.

This deed was given in 1834, and the notes were severally due in October, 1834–5–6–7. The first two notes were paid, but the last two notes it is alleged were not paid at maturity, and if the payment of these notes constituted a condition precedent, which we deny, (see *Spofford* v. *True*, 33 Maine, 284,) the performance of such condition has been waived by the state, and a condition subsequent substituted therefor.

Chap. 84, of the laws of 1840, is identical in language with c. 352, stat. 1838, excepting that it still further extends the payment of the interest until July 1st, 1840, and the payment of the balance due on said notes, for twenty-four months, from the approval of the act. The act was approved March 18th, 1840, so that the payment of the balance was extended until March 18th, 1842.

Now the case of *Thompson* v. *Bright*, 1 Cush. 420, authoritatively settles the soundness and accuracy of our proposition, that by these enactments, enlarging the time of payment, the condition precedent contained in the grant to the Pierces, was converted into a condition subsequent.

"If the grant be a public one, it must be asserted" (say the court in *Schulenberg* v. *Harriman*, 21 Wallace,) "by judicial proceedings authorized by law, the equivalent of an inquest of office at common law, finding the fact of forfeiture and adjudging the restoration of the estate on that ground, or there must be

some legislative assertion of ownership of the property for breach of the condition." Or it may be after judicial investigation, or by taking possession directly, under the authority of the government, without these preliminary proceedings. *U. S.* v. *Repentigny,* 5 Wall. 267.

These acts no where dispensed with the legal prerequisites necessary to be taken, in order to work a forfeiture, for condition broken, either expressly or inferentially.

Now an office of entitling is necessary to give the notoriety and fix the title in the sovereign. So it was adjudged in the *Page case,* 5 Co. 22, and has been uniformly recognized, says STORY, J., in *Fairfax's Devisee* v. *Hunter's Lessee, supra.*

No individual can assail the title the state has conveyed, on the ground the grantee has failed to perform the conditions annexed. *Schulenberg* v. *Harriman, supra,* citing many authorities. And the reason of the rule is tersely stated in *Hooper* v. *Cummings,* 45 Maine, 366.

In 1841 the Pierces released to the state all their right, title and interest, in and to Lot 8, and other lands. Nothing passed to the state by their release. *Coe* v. *Persons Unknown,* 43 Maine, 432 ; *Walker* v. *Lincoln,* 45 Maine, 67.

*Barker, Vose and Barker,* for the defendant, cited : Smith's Laws of 1821, c. 48 ; R. S., 1841, c. 127 ; R. S., 1857, c. 93 ; R. S., 1883, c. 93 ; 11 Mass. 193 ; 16 Pick. 177 ; 60 Am. Dec. 712 ; *Ken. Prop.* v. *Springer,* 4 Mass. 416 ; *Ken. Prop.* v. *Laboree,* 2 Maine, 275 ; *Higbee* v. *Rice,* 5 Mass. 344 ; *Jackson* v. *Elston,* 12 Johns. 454 ; *Little* v. *Megguier,* 2 Maine, 176.

EMERY, J. In this real action both parties claim title from the state, under deeds from the land agent. The deed dated April 4, 1834, from the land agent to the Pierces, under whom the demandants claim, is the earlier deed and is to be first considered.

The demandants contend that by this deed the fee in this land passed from the state to the Pierces ; that the state only retained a right to recover back the fee, in case payment was not made. They cite authorities tending to establish the proposition that in

such cases, where the fee once passes, it does not revest in the state by the mere failure of the grantees to perform the condition ; that there must be some affirmative proceedings by the state, by suit, by inquest of office, or some other, to transfer the fee and seizin back to the state ; that until such proceedings, the fee is still in the grantee, though the conditions remained unperformed. They contend further that if the condition in this deed was a condition precedent, it was changed into a condition subsequent, by the extension by the state of the time for the performance of the condition, and thus was brought within the rule above stated.

It is necessary, therefore, to ascertain what estate in this land passed to the grantee under that deed, and what estate remained in the state. The state was bound by such deed only as it authorized the land agent to give, and the grantee could only receive such estate in the land as the state authorized the land agent to convey. The grantee of the state and those claiming under him, would be bound by any existing statute at the time of the sales and the deeds. The effect of the deed must be judged by the statutes, as well as by the terms of the deed.

The earliest statute, act of 1824, ch. 258, required one-half cash, and "a good and sufficient surety" for the balance before giving the deed. The act of 1828, ch. 393, reserved for the state a lien on all timber lands, and required "good sureties," or notes and a mortgage in the case of other sales. The act of 1831, ch. 510, required in the case of settling lands, sufficient personal security, or notes secured by a mortgage of the land, before giving the deed. The act of 1832, ch. 30, § 2, which was in force at the date of this deed, provided that "in the sales of land by the land agent, the lien which the state retains in the land as security for the payment of the purchase money, may be expressed in the deed of conveyance from the state, instead of taking a mortgage thereof."

At the first, no deed could be given without cash, or good personal security. Then a mortgage back was substituted for personal security. Then for greater convenience, this mortgage security was to be expressed in the deed from the state, instead

of a separate and additional instrument. This course saved expense and the inconvenience of recording and preserving large files of mortgages.

It seems clear that, however expressed and in whatever instrument, the lien or estate to be retained by the state, was at least as effectual and great as that of a mortgagee. To retain a lien for the purchase money, is to retain the legal title, the *proprietas*, though the thing may go into the care of the vendee. *Oakes* v. *Moore*, 24 Maine, 214. The various legislative acts show that the state was to retain this much. Whatever language the land agent used in writing the deed, it could convey no more than the statutes contemplated, no greater estate than that of a mortgagor. Such, indeed, seems to have been the nearly contemporaneous construction of these statutes. In the revision of 1841, they were expressed in this language, " and the liens above mentioned, being so retained by the terms of the land agent's deed, shall be equivalent to a mortgage of the same land to the state." The land agent's deed we are considering was drafted upon the same theory. There is in it no provision for a reverter. It provides that if the notes are paid, " then this to be a good and sufficient deed to convey said lots ; otherwise to be null and void, and said lots to be and remain the property of the state." It is analogous to a bond for a deed, authorizing the obligee to enter, but carefully retaining the title until payment.

That the legislature understood that the fee was unconveyed, that no proceedings were necessary to revest it in the state, is evident from the act of 1842, ch. 33, § 4. This act provided that all lands which had been sold by the land agent prior to August 1, 1841, (including this sale of course) might be declared by the land agent to be forfeited lands, upon the non payment of the notes given for the same, etc. It was also provided in the same act that the land agent might sell such lands.

It appears that the last two notes named in this deed have never been paid. It also appears that this land was afterwards placed by the land agent upon the list of " Forfeited Lands " in the land office, and conveyed by the land agent, by deed of October 7, 1845, under the act of 1842. The grantee under

this last deed went into possession of the land, and his title and possession have come to the tenant in this action. A mortgagee in this state has the legal title, and if he or his assigns be in possession, the mortgagor can not recover possession until he shows affirmatively a performance of the condition. *Gilman* v. *Wills*, 66 Maine, 273 ; *Jewett* v. *Hamlin*, 68 Maine, 172.

If our construction of the statutes and deeds is correct, this tenant can not be evicted by these demandants, so long as the purchase money remains unpaid. Under this construction, the extensions of time of payment, allowed in the subsequent resolves, did not destroy the lien, did not pass the title. Such extensions perhaps waived a forfeiture, extended the time for redemption, but did not extinguish the state's legal title, and leave to it only a right of action.

*Judgment for the tenant.*

Peters, C. J., Walton, Danforth, Foster and Haskell, JJ., concurred.